Cite as 2022 Ark. App. 285

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CR-20-397

| | |
|---|---|
| DALE BARTLETT<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered June 1, 2022<br><br>APPEAL FROM THE MONROE COUNTY CIRCUIT COURT [NO. 48CR-17-71]<br><br>HONORABLE CHALK MITCHELL, JUDGE<br><br>REVERSED AND DISMISSED |

**STEPHANIE POTTER BARRETT, Judge**

Dale Bartlett was convicted by a Monroe County jury of a violation of the Arkansas Hot Check Law (AHCL). He was sentenced to five years' imprisonment and ordered to pay $401,900.25 in restitution plus court costs and fines. On appeal, Bartlett argues that (1) the AHCL does not apply to preexisting debts; (2) the circuit court abused its discretion by permitting the victim to sit at counsel's table as the State's representative; (3) the verdict was not supported by evidence; and (4) the circuit court abused its discretion by admitting evidence under Ark. R. Evid. 404(b). We reverse and dismiss.

Bartlett started Turner Grain (TG), a grain brokering business, in 2001 with Jason Coleman in Brinkley, Arkansas. TG would buy grain (rice, corn, soybeans, and wheat) from local farmers and sell it to a third-party major grain buyer. Once delivered to the third-party buyer, the grain would be graded to determine its quality. The amount of money the farmer

would receive from TG would be calculated from this grade. During this process, the farmer would complete his or her part of the transaction before TG would issue a payment for the grain, which would normally take about two weeks.

David Wilkison, a local farmer, worked with TG selling it rice, corn, and wheat for approximately ten years until 2014. On April 30, 2014, TG began loading trucks with Wilkison's grain, and continued until June 6, 2014, for a total of forty-one loads. A June 16 a settlement statement indicated that TG owed Wilkison $401,900.25 for these forty-one loads of medium-grain rice. Lalain Wilkison, David's wife, picked up a check from TG for this amount and presented it to Helena National Bank (now Partners Bank) for deposit on August 15. The check was returned on August 18 for insufficient funds. Thereafter, Wilkison was never paid for the forty-one loads. On July 31, 2017, a criminal information was filed against Bartlett for violating Ark. Code Ann. § 5-37-302(1) (Supp. 2021) (also known as the AHCL) for the $401,900.25 check.

A jury trial was held from October 29 through November 2, 2019. The State presented six witnesses. After the State rested its case, Bartlett's counsel moved for a directed verdict on the basis that the AHCL applies only to an exchange for value at the time of the transaction under *Ridenour v. State*, 279 Ark. 240, 650 S.W.2d 575 (1983). The State responded that *Ridenour* did not apply to this case because *Ridenour* involved three checks for the sale of cattle that bounced, and the check that was written to replace the three bounced checks also bounced. The circuit court below found *Ridenour* distinguishable from the case at bar because *Ridenour* involved a check replacing a check, and in this case, there was only one transaction, and it was a business practice between the two parties. The circuit court denied Bartlett's motion for directed verdict

2

finding, that there was a prima facie case of intent to defraud under Ark. Code Ann. § 5-37-304(A)(2) because the check, when presented for deposit, bore the endorsement of a collecting bank indicating the instrument had been returned due to insufficient funds.

At the conclusion of the defense's case, Bartlett renewed his motion for directed verdict, and the circuit court denied the renewed motion on the same grounds. The jury found him guilty and sentenced him to five years' imprisonment and ordered him to pay restitution to Wilkison in the amount of $401,900.25 plus court costs and fines.

Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. *Yanmar Co., Ltd. v. Slater*, 2012 Ark. 36, 386 S.W.3d 439. We reverse only if there is no substantial evidence to support the jury's verdict, and the moving party is entitled to a judgment as a matter of law. *Id.* In determining whether substantial evidence supports the jury's verdict, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id.* A motion for directed verdict should be denied when there is a conflict in the evidence or when the evidence is such that fair-minded people might reach a different conclusion. *FMC Corp., Inc. v. Helton*, 360 Ark. 465, 202 S.W.3d 490 (2005).

Bartlett argues that Ark. Code Ann. § 5-37-302(1) does not apply in this case and that his motion for directed verdict should have been granted. Specifically, Bartlett argues that the $401,900.25 check at issue here was for a preexisting debt, which is excluded from the AHCL. We agree.

Arkansas Code Annotated section 5-37-302(1) provides in pertinent part:

It is unlawful for any person:

(1) To procure any article or thing of value or to secure possession of any personal property to which a lien has attached or to make payment of rent or to make payment of a child support payment or to make payment of any taxes, licenses, or fees, or any fine or court costs, or for any other purpose to make or draw or utter or deliver with the intent to defraud, any check, draft, order or any other form of presentment involving the transmission of account information for the payment of money upon any in-state or out-of-state bank, person, firm, or corporation, knowing at the time of such making, drawing, uttering, or delivering that the maker or drawer has not sufficient funds in, or on deposit with, such bank, person, firm, or corporation for the payment of such check, draft, order, or other form of presentment involving the transmission of account information in full, and all other check, draft, order, or other form of presentment involving the transmission of account information upon such funds then outstanding.

The State attempts to distinguish the check at issue by asserting that this payment was not for a preexisting debt; rather, it was a "course of dealing" that Bartlett used to induce Wilkison to continue to sell his grain to TG after the check had been written. In addition, the State argues that *Ridenour* does not apply because the actual price of grain was unknown until it was graded by a third-party buyer. We are not persuaded by either of these arguments.

Our current law is clear that the AHCL does not include preexisting debt. *Ridenour*, 279 Ark. 240, 650 S.W.2d 575. Under similar facts, in *Ridenour*, the appellant purchased cattle from the Montgomery County Auction on three separate occasions during February and March 1982 and charged the purchases to his account. *Id.* He subsequently wrote three separate checks for each of the prior purchases. *Id.* All three checks were returned for insufficient funds. *Id.* Ridenour then wrote a check for the total amount of all three cows for $25,147.77. *Id.* This check was also returned for insufficient funds. *Id.* Ridenour was criminally charged with a violation of the AHCL. *Id.* He was convicted by a jury and sentenced to ninety days imprisonment plus a $1,000 fine. *Id.*

4

On appeal, the supreme court reversed Ridenour's conviction, holding that preexisting debt under the circumstances did not fall under the AHCL. *Id.* The court explained that the original hot-check statute, prior to a 1977 amendment, specifically included "pre-existing debt" as a violation, but that phrase was deleted by the amendment. *Id.* In *Ridenour*, the supreme court held that nothing of value was given or received by the exchange of checks, and the parties remained in exactly the same position as they were in before the exchange. *Id.* We have the identical situation in this case.

We hold that $401,900.25 check at issue was for a preexisting debt and, therefore, does not fall under the AHCL. It was undisputed at the trial that the check was for the medium-grain rice that TG purchased from Wilkison. As in *Ridenour*, nothing of value was either given or received, and the parties remained in exactly the same position as they were before the exchange. The circuit court erred in denying Bartlett's motion for directed verdict. We reverse Bartlett's AHCL conviction and dismiss the case.

We do not address Bartlett's remaining three points on appeal regarding the victim sitting at counsel table, the sufficiency of the evidence to support the conviction, and whether the circuit court abused its discretion by admitting evidence under Ark. R. Evid. 404(b) since the case is reversed and dismissed on the first point on appeal.

Reversed and dismissed.

GLADWIN and MURPHY, JJ., agree.

*Lassiter & Cassinelli*, by: *Erin Cassinelli*; and *Appellate Solutions, PLLC, d/b/a Riordan Law Firm*, by: *Deborah Truby Riordan*, for appellant.

5

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.